IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES STEMRICH, and<br>DANIELLE STEMRICH, his wife,<br><br>    **Plaintiffs**<br><br>    v.<br><br>OLEH ZABIYAKA and<br>T.L. TRANSPORT, LLC<br><br>    **Defendants** | Civil No. 1:12-CV-1409<br><br><br>Judge Sylvia H. Rambo |

### M E M O R A N D U M and O R D E R

Presently before the court are Defendants' motions in limine (Docs. 49, 63, 65 & 67), each of which are opposed by Plaintiffs. Each motion has been adequately briefed and is appropriate for disposition.

### I.     Background

This case arises out of a motor vehicle collision between Plaintiff James Stemrich's ("Plaintiff")[1] automobile and a tractor trailer operated by Defendant Oleh Zabiyaka ("Defendant Zabiyaka"), an employee of Defendant T.L. Transport (collectively "Defendants").[2] On September 28, 2011, Defendant Zabiyaka rear-ended Plaintiff's automobile and caused Plaintiff to suffer serious injuries. Plaintiffs assert that Defendant Zabiyaka was negligent in the operation of his vehicle and that Defendant T.L. Transport negligently hired/retained/supervised Defendant Zabiyaka

---

[1] Plaintiff Danielle Stemrich is only a party to the loss of consortium claim. Accordingly, "Plaintiff" refers to only Plaintiff James Stemrich, but "Plaintiffs" refer to both James and Danielle Stemrich.

[2] This court has jurisdiction based on diversity of citizenship, pursuant to 28 U.S.C. § 1332, because: (1) Plaintiffs are Pennsylvania citizens, Defendant Zabiyaka is a Michigan citizen, and Defendant T.L. Transport, a limited liability corporation, maintains a registered office in Michigan; and (2) the amount in controversy exceeds $75,000.00.

and negligently entrusted Defendant Zabiyaka with a tractor trailer. Plaintiffs argue that Defendants' actions exhibited a reckless indifference to Plaintiff's safety and warrant an award of punitive damages. After discovery closed, Defendants filed a motion for partial summary judgment, in which they sought judgment in their favor on Plaintiffs' claim for punitive damages. (Doc. 51.) On February 21, 2014, the court denied the motion. (Doc. 77.) Pursuant to the case management order, both Plaintiffs and Defendants filed timely motions in limine. The court will address each motion in turn.

## II.     Discussion

### A.     Motion in Limine To Exclude Expert Testimony from Plaintiffs' Treating Physicians

Defendants' first motion seeks to exclude expert testimony of Plaintiff's treating physicians beyond Drs. Terrence Duffy and Michael Furman.[3] (Doc. 49.) In support of their motion, Defendants argue that the testimony of any treating physician beyond Drs. Duffy and Furman is not relevant, insofar as the testimony would not establish a material fact in this case and is otherwise prejudicial because the expert testimony would "have no connection to causation . . . [and] may inflame the jury to make a decision based on something other than the legal propositions relevant to the case." (Doc. 81, p. 4 of 6.) At this stage of the proceedings, it is

---

[3] Defendants originally sought to exclude all expert testimony of Plaintiff's treating physicians with the exception of Dr. Duffy, due to Plaintiffs' alleged procedural noncompliance. (Doc. 49.) The parties have agreed that "if relevant, Plaintiff's treating physicians[,] other than Dr. Duffy, may offer testimony in this matter based upon personal factual observations, treatment they provided[,] and the diagnoses they offered at trial." (Doc. 81, pp. 1-2 of 6.) In their reply brief, Defendants agreed that, in addition to the testimony of Dr. Duffy, the testimony of Dr. Furman is relevant, but seek to limit the presentation of Plaintiff's treating physicians in addition to Drs. Duffy and Furman. (*Id*. at p. 2 of 6.)

inappropriate for the court to exclude the testimony of Plaintiff's treating physicians without first hearing what is established through the testimony of Drs. Duffy and Furman. Indeed, the court cannot see a legitimate reason for excluding the testimony of physicians that is based on their personal observations, proposed diagnoses, or implemented treatment plans, especially when the nature and extent of Plaintiff's injuries remain at issue. To the extent that this testimony may be prejudicial, Defendants' brief has certainly failed to make any showing that the prejudicial nature of the testimony substantially outweighs the probative value or that the testimony would be otherwise needlessly cumulative. Accordingly, without knowing the nature of the proposed testimony, the court cannot determine whether Defendants' objection is meritorious. Thus, the court will defer ruling on Defendants' motion in limine that seeks to exclude the testimony of Plaintiff's treating physicians beyond Drs. Duffy and Furman (Doc. 49) until the pre-trial conference.

  **B.**  **Motion in Limine To Preclude Plaintiffs from Introducing Any Evidence, Argument, or Testimony About Log Violations or Hours of Service Violations/Lack of Sleep**

Defendants' second and third motions seek to exclude any reference to violations of regulations that establish log book requirements or hours of service limitations, beyond those that may have occurred on the day of the collision.[4] (Docs. 63, 66 & 83.) Specifically, Defendants argue that Plaintiffs' expert, Walter Guntharp, opined that there was evidence that Defendants violated regulations pertaining to log books and hours of service but never established a causal relationship between the alleged violations and the collision. (Doc. 63, ¶¶ 2, 8.)

---

[4] Defendants originally sought to exclude any reference to log book or hours of service violations (Doc. 63), but appear, in their reply brief, to concede the relevance of any violations related to the date at issue (Doc. 83).

Therefore, Defendants reason, any alleged hours of service or log book violations are irrelevant and highly prejudicial. (*Id*. at ¶ 9.) In response, Plaintiffs argue that Guntharp is qualified to render an expert opinion due to his thirty years of knowledge, training, and experience in the trucking industry, which includes extensive experience in commercial vehicle operations, driver training, driver education, and compliance with the Federal Motor Carrier Safety Regulations. Plaintiffs also argue that Guntharp concludes, *inter alia*, that, "[h]ad [Defendant Zabiyaka] logged the distances and hours properly, he would have been operating in excess of the regulations that are designed to prevent the operation of a commercial vehicle by a fatigued driver," and, therefore, is relevant. (Doc. 72, p. 11 of 18, Doc. 65-5, p. 4 of 7.) Guntharp additionally points to Defendant T.L. Transport's "poor safety culture," despite mandates to the contrary set forth in the regulations, which permitted Defendant Zabiyaka to violate the regulations without reprimand or additional training. (Doc. 63-4, p. 7 of 9.)

      The evidence of Defendant Zabiyaka's repeated hours of service violations and T.L. Transport's knowledge of the same prior to the date of the collision is relevant to the issue of punitive damages. Plaintiffs' assertion that Defendant T.L. Transport engaged in a pattern of conduct by permitting Defendant Zabiyaka to drive while he was fatigued or in excess of the hours of service regulations is relevant to the direct claims against Defendant T.L. Transport, *i.e.*, the negligent supervision and training claims. Furthermore, whether Defendants were in violation of these regulations on the day of the collision is not imperative in the court's determination of the motion, as this type of evidence tends to establish Defendants' knowledge – and conscious disregard – of Defendant Zabiyaka's unsafe

conduct.  Accordingly, evidence of Defendant Zabiyaka's log book or hours of service violations will be admissible and will not need to be limited to the day in question and Defendants' motions seeking to exclude the same will be denied.  However, while Guntharp can testify regarding truck driver training, federal regulations, and Defendants' compliance therewith, Guntharp has no reliable basis to conclude that Defendant Zabiyaka was fatigued when his truck collided with Plaintiff's vehicle.  Accordingly, Plaintiffs will not be permitted to present Guntharp's opinion regarding whether Defendant Zabiyaka was fatigued without first establishing a proper evidentiary foundation.

> **C.** **Motion in Limine To Preclude Plaintiffs from Introducing Any Evidence, Argument, or Testimony that [Defendant] Zabiyaka is a Professional Driver**

Defendants final motion in limine seeks to exclude reference to Defendant Zabiyaka as a professional truck driver.  (Doc. 67.)  In support of their motion, Defendants argue that, because Pennsylvania law does not impose a heightened standard of care for a truck driver, referring to Defendant Zabiyaka as a professional truck driver would mislead the jury into believing that Defendant Zabiyaka is held to a standard other than that of a reasonable person.  (*Id*. at p. 2 of 4.)  In response, Plaintiffs concede that professional drivers do not have a heightened standard of care but argue that the term is a widely accepted classification, pointing to Defendant Zabiyaka's deposition during which he referred to himself as a professional driver.  (Doc. 72, p. 15 of 18.)

It is undisputed that Defendant Zabiyaka has been employed as a commercial truck driver and has significant driving experience.  It is also undisputed that such a status does not operate to hold him to a heightened standard of care in

negligence claims as compared to other motorists.  *See, e.g.*, *Fredericks v. Castora*, 360 A.2d 696, 698 (Pa. Super. Ct. 1976) ("A requirement that experienced truck drivers be subject to a higher standard of care does not impress us as being a useful concept to infuse into the law of vehicle negligence.").  Instead, professional truck drivers are held to a different standard, not a heightened standard.  For instance, Defendant Zabiyaka, as a commercial driver, is subject to federal regulations, *inter alia*.

Individuals who make their living driving trucks and other large vehicles are commonly referred to in tort cases, such as the present case, as professional drivers.  The court understands Defendants' concern that the jury may erroneously hold Defendant Zabiyaka to a higher standard of care because of his status as a professional driver.  However, this will be properly remedied by careful jury instructions.  Accordingly, Defendants' motion in limine seeking to preclude reference to Defendant Zabiyaka as a professional driver will be denied.

### III.     Conclusion

Based on the foregoing, the court is unable to conclude that physician testimony, beyond that of Drs. Duffy and Furman, would be irrelevant or prejudicial and will accordingly defer ruling on Defendants' motion in limine until the pre-trial conference.  The court also concludes that Plaintiffs' expert is qualified to render an expert opinion regarding log book or hours of service violations due to his having over thirty years of knowledge, training, and experience in the trucking industry, including extensive experience in commercial vehicle operations, driver training, driver education, and compliance with the Federal Motor Carrier Safety Regulations.

However, Guntharp will not be permitted to present an unsupported speculative opinion regarding Defendant Zabiyaka's fatigue. Lastly, because the term "professional driver" is a generally accepted term, Plaintiffs will not be precluded from referring to Defendant Zabiyaka as a professional driver. However, Plaintiffs are cautioned not to argue or imply that Defendant Zabiyaka should be held to a higher standard of care, and the parties are invited to submit an appropriate proposed jury instruction to ensure that the jury does not improperly hold Defendant Zabiyaka to a higher standard.

Accordingly, **IT IS HEREBY ORDERED** as follows:

1. Ruling on Defendants' motion in limine seeking to exclude expert testimony from Plaintiff's treating physicians beyond Drs. Duffy and Furman (Doc. 49) is **DEFERRED** until the pre-trial conference.

2. Defendants' motion in limine to preclude evidence of any logbook violations of the Federal Motor Carrier Safety Regulations (Doc. 63) is **DENIED**.

3. Defendants' motion in limine to preclude evidence of lack of sleep or fatigue of Defendant Zabiyaka is **GRANTED IN PART**. Guntharp may offer testimony regarding the hours of service regulations and whether Defendants were in compliance with the same. However, Guntharp may not offer an opinion regarding whether Defendant Zabiyaka was operating his vehicle while fatigued without a proper evidentiary foundation.

    4.      Defendant's motion in limine to preclude reference to Defendant Zabiyaka as a professional driver (Doc. 67) is **DENIED**.

                                                  s/Sylvia H. Rambo
                                                  SYLVIA H. RAMBO
                                                  United States District Judge

Dated: March 7, 2014.